UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| VEE BAR, LTD. and PIGMON & DAUGHTERS, LTD., | § § § § § § § § § § § § § § | No. 4:16–CV–015–DAE |
| Plaintiffs, | | |
| vs. | | |
| NORTHERN NATURAL GAS COMPANY, | | |
| Defendant. | | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS; (2) DENYING ALTERNATIVE
MOTION FOR A MORE DEFINITE STATEMENT

Before the Court is Defendant Northern Natural's ("Northern") Motion to Dismiss and Alternative Motion for a More Definite Statement. (Dkt. # 2.) Plaintiffs Vee Bar, Ltd. ("Vee Bar") and Pigmon & Daughters, Ltd. ("Pigmon") (collectively, "Plaintiffs"), timely filed a Response (Dkt. # 4), and Defendant filed a Reply (Dkt. # 5). Pursuant to Local Rule 7(h), the Court finds the matter suitable for disposition without a hearing. Having considered the arguments in support of and against the Motions, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss, and **DENIES AS MOOT** Defendant's Alternative Motion for a More Definite Statement. (Dkt. # 2.)

1

BACKGROUND

This suit arises out of a series of contractual agreements between Plaintiffs and various predecessors-in-interest of Plaintiffs, and Northern its predecessor-in-interest Permian Pipeline Company ("Permian"). These contractual agreements grant Northern and Permian certain rights to conduct activities related to the operation of a natural gas pipeline, and date back to 1959. ("Compl.," Dkt. # 1-4.) A brief history is set forth, below. (Id.)

On March 2, 1959, Earl Vest, predecessor-in-interest to Plaintiffs, executed an agreement granting Permian specified rights to a six-acre tract of land located in Winkler County, Texas.[1] (Compl. at 2–3; "1959 Agreement," Compl. Ex. A.) This agreement gave Permian and its heirs and assignees the right to "erect thereon a natural gas dehydrating plant, a gas processing plant, compressor facilities, or other such facilities . . . for use in connection with the operation of a natural gas pipeline." (Id. ¶ 1.) The agreement stipulated that Permian could not use the land for any other purpose, and contained a reverter clause mandating that the "premises in its entirety shall ipso facto revert to Grantor, his heirs and assigns," should Permian cease to use the land "in connection with the operations of a natural gas pipeline for gathering and transmission of natural gas." (Id. ¶ 5, id. at 3; Compl. at 2.)

---

[1] Specifically, the land is located in Section 15, Block B-5, of Winkler County. (Compl. at 2; 1959 Agreement at 1.)

On May 15, 1967, Sam Vest and Rex Pigmon executed a second agreement granting Northern an easement for use of a three-acre plot of land adjoining the six-acre plot of land. ("1967 Agreement," Compl. Ex. B.) Like the 1959 Agreement, the 1967 Agreement granted Northern an easement over the land "for the purposes of constructing, installing, testing, operating, maintaining, [and] repairing . . . equipment and machinery for the dehydration, compression, or processing of hydrocarbons." (Id. at 1–2; Compl. at 3.) The 1967 Agreement explicitly stated that Northern "shall not use or enjoy the above described premises except for the purposes hereinabove granted," and contained a reverter provision stating that Northern's rights to both the three-acre and six-acre tracts "shall terminate after [Northern] ceases to use" the land for the intended purpose. (1967 Agreement ¶ 5; Compl. at 3.)

On September 18, 1973, Sam Vest and Rex Pigmon, predecessors-in-interest of Plaintiffs, executed a third agreement granting Northern the right to construct a compressor station on a 200 foot by 200 foot tract of land directly adjoining the six-acre tract, and rights to use the remainder of the one-acre tract to construct and otherwise operate and repair, "machinery for the dehydration, compression, or processing of hydrocarbons." ("1973 Agreement," Compl. Ex. C.) Like the agreements for the six-acre and three-acre tracts, the agreement for the one-acre tract stated that Northern did not have a right to use the land for any other

3

purpose, and that "the rights herein granted shall terminate after Grantee ceases to use the tracts," at which point Northern has only the limited "right to remove all property placed on said land." (Id. ¶¶ 2, 5; Compl. at 3–4.)

On June 5, 2003, an explosion occurred at Northern's Kermit Compressor Station, located on the land, rendering the facility non-operational. (Compl. at 4.) On June 9, 2003, Plaintiffs granted Northern a temporary 100-foot right-of-way and easement, which was to last "only so long as is required to complete the return to service of [Northern's] Kermit Compressor Station and related facilities." ("TPRWA," Compl. Ex. D.)

On March 19, 2008, Northern submitted an application to the Federal Energy Regulatory Commission ("FERC") requesting to abandon the Kermit Compressor Station and appurtenant facilities. (Compl. at 4; "FERC App.," Compl. Ex. E.) The FERC approved the requested abandonment on June 9, 2008. ("FERC Approval," Compl. Ex. F.) Northern filed a Notice of Abandonment with the FERC on June 18, 2008, stating that the Kermit compressor units were officially abandoned on June 17, 2008 ("Abandonment Notice," Compl. Ex. G).

On February 18, 2016, Plaintiffs brought the instant suit in the 109th District Court of Winkler County, Texas, (1) seeking declaratory judgment to interpret the rights of Plaintiffs and Northern after the FERC proceeding (Compl. at 5); (2) bringing a cause of action for breach of contract (id. at 5–6); and

(3) bringing a cause of action for trespass[2] (id. at 6), and seeking damages and attorney's fees (Id. at 6–7).  On March 14, 2016, Northern, a Delaware corporation with a principal place of business in Omaha, Nebraska, removed the case to Federal Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).  On March 17, 2016, Northern filed the instant Motion to Dismiss and Alternate Motion for a More Definite Statement.  (Dkt. # 2.)  Plaintiffs filed a Response (Dkt. # 4), and Northern filed a Reply (Dkt. # 5).

## LEGAL STANDARD

I. Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).

---

[2] The Complaint seeks "damages to real property sustained by continued use of Vee Bar lands . . ." (Compl. at 6.)  Northern characterizes this claim as one for trespass (Dkt. # 2 at 6–7), and Plaintiffs' response avers that the claim is, in fact, one for trespass (Dkt. # 4 at 7–8).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

II. Motion for a More Definite Statement

Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under [Federal Rule of Civil Procedure] 12(e) before responding." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  "Rule 12(e) provides that '[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.'" Jiminez v. Regus Verus Foods, LLC, 2015 WL 128157, at *1 (W.D. Tex. Jan. 8, 2015) (quoting Fed. R. Civ. P. 12(e)).

DISCUSSION

I. Motion to Dismiss Under Rule 12(b)(6)

Northern seeks to dismiss each of the claims Plaintiffs have raised against it, arguing that Plaintiffs are impermissibly attempting to bring a trespass-to-try title claim under the guise of a claim for declaratory judgment, and arguing that the breach of contract and trespass claims are barred by the statute of limitations. (Dkt. # 2.)

A. Declaratory Judgment Claim

Plaintiffs' complaint seeks declaratory judgment from the Court interpreting the rights to the six-, three-, and one-acre tracts of land in light of the 2008 FERC decision and subsequent notice of abandonment of the Kermit Compressor Station. (Compl. at 5.) Defendant argues that this claim should be dismissed because it is not, in fact, a declaratory judgment claim, but a veiled attempt to bring a trespass-to-try-title action. (Dkt. # 2 ¶¶ 9–11.)

The purpose of the Texas Declaratory Judgments Act ("TDJA"), Tex. Civ. Prac. & Rem. Code §§ 37.001–37.011, "is 'to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.'" Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995) (quoting Tex. Civ. Prac. & Rem. Code § 37.002(b)). The TDJA "does not create or augment a trial court's subject-matter jurisdiction,' but is "merely a procedural device for deciding

cases already within the court's jurisdiction." Transp. Ins. Co. v. WH Cleaners, Inc., 372 S.W.3d 223, 227 (Tex. App. 2012). Accordingly, declaratory judgment is only suitable where there is a judiciable controversy: "one in which a real and substantial controversy exists involving a genuine conflict of tangible interest." Id. (citing Beadle, 907 S.W.2d at 467). Under the TDJA, a justiciable controversy exists where a party "interested under a deed . . . written contract, or other writings constituting a contract," seeks a determination of "any question of construction or validity arising under the instrument," or a "declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a); Unocal Pipeline Co. v. BP Pipelines (Alaska) Inc., 2016 WL 2929095, --S.W.3d--, at *5 (Tex. App. May 17, 2016).

Defendants allege that this claim should be dismissed because Plaintiffs are impermissibly asking the Court to declare the superiority of their title, which may only be accomplished by means of a trespass-to-try title action. (Dkt. # 2 ¶¶ 9–10.)[3] While Defendants correctly assert that certain claims regarding title to land

---

[3] To prevail on a trespass-to-try title action, a plaintiff must "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." Martin v. Amerman, 133 S.W.3d 262, 265 (Tex. 2004) (citing Plumb v. Stuessy, 617 S.W.2d 667, 668 (Tex. 1981)). "The pleading rules" for a trespass-to-try title claim "are detailed and formal, and require a plaintiff to prevail on the superiority of his title," rather than "the weakness of a defendant's title." Amerman, 133 S.W.3d at 265 (citing Land v. Turner, 377 S.W.2d 181, 183 (Tex. 1964)).

may not be brought pursuant to the TDJA, they mischaracterize Plaintiffs' claims here. The TDJA "and the trespass-to-try-title statute differ in their elements and the relief they afford." Wilhoite v. Sims, 410 S.W.3d 752, 760 (Tex. App. 2013). The TDJA "permits parties to seek a declaration of rights, status, or other legal relationships under certain instruments, including deeds." Id. Conversely, a trespass-to-try title action "is used to clear problems in chains of title to recover possession of land unlawfully withheld from a rightful owner." Id. (citing Martin v. Amerman, 133 S.W.3d 262, 265 (Tex. 2004)). Here, Plaintiffs' complaint does not ask the Court to clear problems in their chain of title, but rather to "interpret[ ] the rights of the respective parties under each of the conveyance documents giving consideration to the abandonment proceedings" before the FERC. (Compl. at 5.) This constitutes a justiciable controversy that would be properly addressed through a declaratory judgment action.

Under the TDJA, this Court has the authority to interpret each of the written agreements attached as exhibits to the complaint, and determine the effect the FERC decision has, if any, upon the reverter clause contained in each document. (See FERC App.; 1959 Agreement; 1967 Agreement; 1973 Agreement, TPRWA.) The Court has the authority to address this issue, and its interpretation will end the dispute. Accordingly, Plaintiffs have pled sufficient facts to state a declaratory judgment claim. Defendants' Motion to Dismiss this claim is **DENIED**.

B. Breach of Contract Claim

Plaintiffs allege that Northern breached the TPRWA, because the TPRWA granted Northern a temporary easement for its pipeline "only so long as is required to complete the return to service of Northern's Kermit Compressor Station and related facilities." (Compl. at 5–6.) According to Plaintiffs, Northern has breached the TPRWA, because the pipeline Northern constructed under the easement continued to be present from 2008 to 2015, after the Kermit Compressor Station was abandoned. (Id.) Northern argues this claim is barred by the applicable four-year statute of limitations. (Dkt. # 2 ¶¶ 12–13.) Plaintiffs respond that the discovery rule, which tolls the statute of limitations until the cause of action is discovered, applies here. (Dkt. # 4 ¶¶ 15–16.)

Under Texas law, a claim for breach of contract is "subject to a four-year statute of limitations." Smith Int'l Inc. v. Eagle Grp., LLC, 490 F.3d 380, 386 (5th Cir. 2007); Tex. Civ. Prac. & Rem. Code § 16.0051. As a rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996). The discovery rule provides a "very limited" exception to the statute of limitations, and "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action."

Comput. Assoc. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996) (citing Trinity River Auth. v. URS Consultants Inc., 889 S.W.2d 259, 262 (Tex. 1994)); see also Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997) (explaining that the discovery rule also "applies in cases of fraud and fraudulent concealment"). The discovery rule is applied categorically, and does not toll the statute of limitations for "the type of injury that generally is discoverable by the exercise of reasonable diligence." HECI Expl. Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).

Plaintiffs argue that the discovery rule applies here for three reasons: (1) they "had no reason to believe Defendant was not working to return to service the compressor site;" (2) they did not receive notice of the abandonment until the FERC decision was sent to them on April 21, 2015; and (3) they were not able to discover the injury because the TPWRA restricted them from full usage of the land. (Dkt. # 4 ¶¶ 16–18.) These failures to discover the alleged breach of contract do not implicate the discovery rule because the abandonment was not kept secret and was not otherwise inherently undiscoverable. See HECI Expl., 982 S.W.2d at 886. The FERC filings, while not sent directly to Plaintiffs, were public documents and Plaintiffs could—through the exercise of due diligence—have discovered Northern's abandonment of the Kermit compressor station and determined that the continued presence of the temporary pipeline violated the TPRWA. (Id. at 887.) Further, Northern's failure to conduct repairs on the

11

property was open and notorious, and was not hidden from discovery in any way. The discovery rule does not stall the four-year statute of limitations applicable to breach of contract claims.

Northern filed its public notice of abandonment of the Kermit Compressor Station with the FERC on June 18, 2008. (Abandonment Notice.) Accordingly, the statute of limitations accrued on that date, and all causes of action for breach of contract should have been brought before June 19, 2012. Plaintiffs' breach of contract claim is barred by the statute of limitations, and Northern's Motion to Dismiss this claim is **GRANTED** (Dkt. # 2). This claim is **DISMISSED WITH PREJUDICE**.

C. Trespass Claim

Plaintiffs' complaint states that Northern's continued use of the 10 acres of property identified in the 1959, 1967, and 1973 agreements, as well as its continued use of the temporary right of way under the TPRWA, amounts to trespass. (Compl. at 6.) Northern's Motion to Dismiss states that all trespass claims are barred by the applicable two-year statute of limitations. (Dkt. # 2 ¶¶ 14–15.) Plaintiffs again invoke the discovery rule, arguing that the statute of limitations should be tolled, because they were not aware of the abandonment proceedings before the FERC; according to Plaintiffs, the statute of limitations for

trespass did not begin to toll until they learned of the abandonment proceedings in 2015.  (Dkt. # 4 ¶¶ 17–18.)

A plaintiff properly pleads a claim for trespass where it makes "[a] showing of an unauthorized physical entry onto [its] property by some person or thing."  Yalmanchili v. Mousa, 316 S.W.3d 33, 40 (Tex. App. 2010).  With limited exceptions inapplicable here, "a person must bring suit for trespass . . . not later than two years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code § 16.003(a).  "As a rule . . . a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later."  Murphy, 964 S.W.2d at 270 (quoting S.V., 933 S.W. 2d at 4).  As explained above, the discovery rule would only toll the statute of limitations if the trespass was "inherently undiscoverable."  See EnerQuest Oil & Gas, LLC v. Plains Expl. & Prod. Co., 981 F. Supp. 2d 575, 617–18 (W.D. Tex. 2013) ("Whether a type of injury is inherently undiscoverable is determined on a categorical basis (emphasis in original)); Taub v. Houston Pipeline Co., 75 S.W.3d 606, 619 (Tex. App. 2002).  Here, for the same reasons stated above, the FERC decision and subsequent public notice of abandonment, was open and notorious and not inherently undiscoverable; the discovery rule does not apply here.  Accordingly, Plaintiffs' trespass cause of

action accrued when Northern filed its public notice of abandonment with the FERC on June 18, 2008, and ran two years later, in 2010.[4]

As such, Northern's Motion to Dismiss Plaintiffs' trespass claim is **GRANTED** (Dkt. # 2).  Plaintiffs' trespass claim is **DISMISSED WITH PREJUDICE**.

II. Motion for a More Definite Statement

Plaintiffs have sufficiently pled a cause of action for Declaratory Judgement.  Further, the Court determined that the statute of limitations has run on Plaintiffs' Breach of Contract and Trespass claims.  Accordingly, the Court deems that Northern's alternate motion for a more definite statement is **MOOT**.

---

[4] No party mentions the continuing tort doctrine, which "applies to tortious acts that are inflicted over a period of time and repeated until desisted [and] . . . create a separate cause of action each day they exist."  W.W. Laubach Trust/The Georgetown Corp. v. The Georgetown Corp./W.W. Trust, 80 S.W.3d 149, 159 (Tex. App. 2002).  While the doctrine is ultimately inapplicable here, it warrants discussion and distinction.

When determining whether trespass involves the continuing tort doctrine, "care must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortious acts and 2) continuing injury arising from one wrongful act.  While the former evinces a continuing tort, the latter does not." Krohn v. Marcus Cable Assoc., L.P., 201 S.W.3d 876, 881 (Tex. App. 2006); see also Schneider Nat. Carriers, Inc. v. Bates, 147 S.W.3d 264, 270 (Tex. 2004).  Here, the presence of the pipeline on Plaintiffs' land falls into the second category; while the presence of the pipeline results in continuing injury, this injury arises from a single wrongful omission: the failure to remove the pipeline after abandoning the compressor station.  See Krohn, 201 S.W.3d at 881.  Accordingly, the continuing tort doctrine would not apply here, even if Plaintiffs had argued that it did.  See id.; W.W. Laubach Trust, 80 S.W.3d at 159.

CONCLUSION

For the reasons stated above, Northern's Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED** as to Plaintiff's claims for breach of contract and trespass, and these claims are **DISMISSED WITH PREJUDICE** (Dkt. # 2). The motion is **DENIED** as to Plaintiff's request for Declaratory Judgment. (Id.) Northern's Alternative Motion for a More Definite Statement is **DENIED AS MOOT** (Id.)

**IT IS SO ORDERED.**

**DATED:** Pecos, Texas, July 25, 2016.

_____
David Alan Ezra
Senior United States Distict Judge